Tlie opinion of the Court was delivered by
Todd, J.
This is a suit against tbe. principals and surety on an attachment bond.
Tbe attachment was taken out by L. H. Gardner & Co., against. J. J. McDaniel & Co., and on tbe trial of the cause, judgment was rendered against tbe plaintiffs therein of non-suit, which judgment was affirmed by this Court, on appeal.
Exceptions were filed by tbe defendants, and those requiring notice are : 1st. That tbe suit was premature. 2d. That tbe plaintiffs were without interest to prosecute the suit.
This action on tbe attachment bond was instituted before, final judgment in .the Supreme Court of tbe cause in which tbe writ issued and pending tbe appeal from tbe judgment of tbe District Court, and the *343 defendants excepted that before the final determination of that cause, no action would lie. Thereupon, the plaintiffs amended their petition, and alleged that since the institution of this suit, the Supreme Court had affirmed the judgment, in the attachment case, thus finally' disposing of it. The court below allowed the amendment and overruled the exception of prematurity, and we think the court whs correct. Nelson vs. Poole, 17 L. 209; Warfield vs. Oliver, 23 A. 612,
The facts connected with the second exception are these:
On the 4th of April, 1876, the plaintiffs subrogated R. H. Yale and C. J. Nicholson to their rights, against the defendants in this suit, -which act of subrogation was filed in court on the 17th March, 1877, and the proper order rendered of same date, recognizing said subrogees as plaintiffs in the case.
Tim defendants, excepting, averred that this claim of J. J. McDaniel & Co., against them, had been seized at the suit of J. W. Arthur & Co., before notice of the subrogation had ever been given them, and that the interests, both of the original plaintiffs and the alleged subrogees, were divested by the seizure mentioned, and the suit should, therefore, abate.
The subrogation to Yale and Nicholson was filed in open court in this case before the attachment was issued by J. W. Arthur & Co., under which the. alleged seizure of the claim was made, the subrogation having been entered on the 17th March, as stated, and the attachment suit of Arthur & Co., not having been filed till the 5th of April thereafter. Besides, Arthur & Co. are not before the Court, asserting title to the claim under their seizure, nor is it even alleged that the claim had ever been sold under the seizure, and under these circumstances, this exception was properly overruled.
The answer of the defendant was a general denial, and a special denial of malice, and of a want of probable cause in the issuing of the attachment. There was judgment for the defendants after a jury trial, and plaintiffs have appealed.
The defendants, in the first place, deny that plaintiffs have any right of action, for the reason that the judgment in the attachment ease was one of non-suit, and that in the absence of a. judgment rejecting the demand or expressly dissolving the attachment, no action would lie on the bond, or at least the question would still remain an open one whefher the attachment rightfully issued or not. We cannot concur in this view.
The writ of attachment issued at the instance of the creditor, the goods of the debtor were seized, and the attaching creditor failed on the trial to maintain the attachment. This was equivalent to its disso.lution, and though the claim in behalf of which the aid of this conserv *344 atory writ was invoked, might, under the judgment, be again prosecuted, the judgment is conclusive as to the tact that in that suit the attachment wrongfully issued. The defendants are, therefore, liable for the damages, if any, caused by the attachment.
The evidence satisfies us that the writ was not issued in malice and in the entire absence of probable cause. The plaintiffs had bought the defendants’ goods — the plaintiffs being retail merchants in the State of Texas, and the defendants (Gardner & Co.) engaged in the wholesale business,' as merchants, in Now Orleans — and had failed to pay for them. They had given their draft for the debt on certain merchants in Shreveport, which was not paid. The draft was not seasonably protested, and there was not sufficient proof that the debtor was not entitled to protest and notice for want of funds in hand of drawees, or other cause, at least such was the conclusion of the court. The writ may have improvidently issued, but the attaching creditors may have reasonably believed that they were entitled to it, particularly as it was shown, that in resorting to the proceeding, they acted under the advice; of counsel. The plaintiffs are, however, entitled to the actual damage caused by the writ j and we shall proceed, under the evidence, to make an estimate of the damage, a task always difficult in the face of conflicting testimony, which generally attends cases of this kind.
The property attached was worth $1200. McDaniel, in his testimony, estimates it at a larger sum. After remaining under seizure for several months, it sold for $405 — a loss of $795, properly to be estimated as part of the damages. We cannot include the counsel fees, for defending the attachment suit, in the damages. No motion was made to dissolve the attachment, and the answer filed was purely a defense to the merits, and when the suit was dismissed, the attachment went with it. In such cases, only the fee exclusively for dissolving the writ can he allowed, and here there was no such exclusive or distinct service rendered. Nor can we allow the expenses alleged to have been incurred by McDaniel, for his trip from Texas to New Orleans, and the additional expenses claimed for time consumed and trouble, incurred ini preparing for the defense of the suit. It is not shown that such trip1 was necessary, and the other claim is not sufficiently definite.
There are, however, circumstances attending this case sufficiently established by the evidence, that compel us not to limit the damages; to the single item relating to the loss on the goods, as stated above. It is shown, that the defendants in the attachment were not aware, at the time the writ issued, that the draft they had given in settlement of their indebtedness to L. H. Gardner & Oo. had not been paid, and we are led to believe, that the draft was given in good faith, and with *345 the expectation that it would be honored. As soon as the seizure was made, it is in proof that McDaniel, who was in New Orleans at the time, immediately went forward and offered to pay the attaching creditors the amount of their debt if they would pay the costs of the proceeding, which they refused to do. McDaniel testifies, that at the time, his firm was doing a prosperous business in Texas, and that in consequence of this attachment, this business was completely broken up and the firm’s credit totally destroyed, Were his testimony supported by other testimony in all particulars, we would be compelled to award plaintiffs heavy damages; but it is not corroborated as to the extent and condition of his business, and as to the direct effect of the proceeding upon it. In one particular, however, it is supported, and that is in relation to the effect of the seizure upon his credit in New Orleans, the principal point where his purchases were made ; and that was, that there his credit was greatly impaired, if not wholly ruined; and we may reasonably infer the injury to his business from this cause alone, for it is shown, that previously to this, his credit was good, and, as some merchants testified, that he could command a credit with their respective firms, to the amount of several thousand dollars.
Upon a review of the evidence, the plaintiff must have sustained a damage on this account, at the very least, to the extent of five hundred dollars. Nor is such allowance, from this cause, in the nature of exemplary or vindictive damages, as agreed by the defendant’s counsel, but may be properly classed with the actual damages caused by the proceeding under our ruling in the case of Byrne vs. Gardner & Co., 33 A. 6, and the authorities therein referred to.
Our conclusion is, therefore, that the plaintiffs have been damaged, aggregating the sums above mentioned, "to the amount of twelve hundred and ninety-five dollars, for which they are entitled to a. judgment.
It is therefore ordered, adjudged and decreed, that the judgment appealed from be annulled, avoided and reversed, and proceeding to render such judgment as should have been rendered, it is ordered, adjudged and decreed, that the plaintiffs, J. J. McDaniel & Co., for the use of their subrogees, R. H. Yale and C. J. Nicholson, recover of the defendants, L. H. Gardner & Co., (L. H. Gardner, Sami. L. Boyd and Jonas H. French) and Albert Baldwin, their surety ou the attachment bond, in solido, twelve hundred and ninety-five dollars, with legal interest thereon from judicial demand, and costs of suit in both Courts.